IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.  1:09-cv-01578-CMA-MEH

CLEARY BUILDING CORP., a Wisconsin corporation,

> Plaintiff,

v.

DAVID A. DAME, an individual,

> Defendant.

---

## PLAINTIFF CLEARY BUILDING CORP.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................. 1

III.  SUMMARY OF LAW FOR MOTION TO DISMISS .............................................. 3

IV.  ARGUMENT .................................................................................................. 4

     A.     Cleary Building's Cybersquatting Claim (Count I) Is Well-Pleaded
           And Has More Than Sufficient Factual Basis............................................ 4

           1.     Cleary Building has pled sufficient facts to show that the
                  Dame Website domain name is confusingly similar to a
                  Cleary Building Mark ...................................................................... 4

           2.     The Complaint contains well-pleaded facts more than
                  sufficient to support a plausible claim of bad faith intent ............... 5

                 a.     A majority of the nine ACPA bad faith factors favor
                        Cleary Building and support a finding of bad faith .............. 7

     B.     Cleary Building's Lanham Act Claims (Counts II–V) Are Well-
           Pleaded and Have More Than Sufficient Factual Basis.......................... 10

           1.     Under the correct law, Cleary Building has stated a plausible
                  claim for relief under the Lanham Act........................................... 11

           2.     Cleary's well-pleaded facts are more than sufficient to show
                  that Dame used a Cleary Building Mark "in connection with"
                  Dame's commercial offers to sell the Dame Building ................... 14

                   a.     The Dame Website cannot be considered a mere
                        gripe site because Dame is using the site to publish
                        false and defamatory statements regarding Cleary
                        Building........................................................................... 16

                 b.     The direct hyperlink between the Dame Website and
                        Dame's online advertisements is sufficient to satisfy
                        "in connection with" under the Lanham Act ....................... 16

     C.     Diversity jurisdiction is properly asserted ................................................ 19

     D.     Cleary Building's State Trademark Infringement Claim (Count VI)
           and Deceptive Trade Practices Claim (Count VII) are Well-Pleaded ...... 21

           1.     Cleary Building's state trademark infringement claim is both
                  well-pleaded and plausible............................................................ 21

            2.     Cleary Building's deceptive trade practices claim (Claim VII)
                  is both well-pleaded and plausible ................................................ 23

**TABLE OF CONTENTS**
**(continued)**

**Page**

E.    Cleary Building requests its claim for punitive damages be
      dismissed without prejudice ................................................................. 25

V.    CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Corrections Corp. of America*,
187 P.3d 1190 (Colo. App. 2008)............................................................. 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)................................. 3, 4, 6, 7

*Beltronics USA, Inc. v. Midwest Inventory Distribution*,
LLC, 562 F.3d 1067 (10th Cir. 2009) .................................................. 13, 14

*Bosley Medical Institute, Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005)............................................... 10, 14, 15, 17

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n*,
447 U.S. 557 (1980)................................................................. 16

*Coca-Cola Co. v. Purdy*,
382 F.3d 774 (8th Cir. 2004) ....................................................... 5

*DaimlerChrysler v. The Net Inc.*,
388 F.3d 201 (6th Cir. 2004) ....................................................... 5

*Dias v. City and County of Denver*,
567 F.3d 1169 (10th Cir. 2009) ................................................... 2, 9

*Duran v. Carris*,
238 F.3d 1268 (10th Cir. 2001) .................................................... 4

*Harrison v. Microfinancial Inc.*,
2005 USDistLexis 2804 (D.Mass., Feb. 24, 2005) .................................... 9

*Mayflower Transit, LLC v. Prince*,
314 F.Supp.2d 362 (D.N.J. 2004) ................................................. 6, 8, 9

*McPhail v. Deere & Co.*,
529 F.3d 947 (10th Cir. 2008) ................................................... 19, 21

*OBH, Inc. v. Spotlight Magazine, Inc.*,
86 F.Supp.2d 176 (W.D.N.Y. 2000) ................................................. 18

*People for the Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) ...................................................... 18

# TABLE OF AUTHORITIES
## (continued)

Page

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
   62 P.3d 142 (Colo. 2003) ........................................................................... 24

*Scheuer v. Rhodes*,
   416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ................................... 4

*Smith v. U.S.*,
   561 F.3d 1090 (10th Cir. 2009) .................................................... 3, 5, 6, 24

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ............................................................................. 19, 21

*Steele v. Bulova Watch Co.*,
   344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952) .................................... 10

*Sutton v. Utah State Sch. for Deaf & Blind*,
   173 F.3d 1226 (10th Cir. 1999) .................................................................. 3

*Taubman Co. v. Webfeats*,
   319 F.3d 770 (6th Cir. 2003) .................................................................... 18

*Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*,
   527 F.3d 1045 (10th Cir. 2008) .......................................................... 17, 18

*Warner-Lambert Co. v. Northside Development Corp.*,
   86 F.3d 3 (2d Cir. 1996) ................................................................ 12, 14, 22

*Woodmen of World Life Ins. Soc'y v. Manganaro*,
   342 F.3d 1213 (10th Cir. 2003) ................................................................ 19

**STATUTES**

15 U.S.C.
   § 1114 ....................................................................................................... 14
   § 1114(a) and (b) ...................................................................................... 14
   § 1125(a) ................................................................................................... 14
   § 1125(c) ................................................................................................... 14
   § 1125(d)(1)(A) ........................................................................................... 5

28 U.S.C.
   § 1332 ....................................................................................................... 19
   § 1367(a) ................................................................................................... 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Colo. Rev. Stat.
  § 13-21-102 (2005) ................................................................................................. 25

RULES

Fed.R.Civ.P.
  12(b)(1) ........................................................................................... 1, 19, 21, 26
  12(b)(6) ........................................................................................................... passim

OTHER AUTHORITIES

First Amendment ....................................................................................................... 16

McCarthy on Trademarks § 25:78 ............................................................................... 5

S. Rep. 106-140 ......................................................................................................... 8

Plaintiff Cleary Building Corp. ("Cleary Building" or "Cleary"), by its undersigned counsel, hereby opposes Defendant David A. Dame's ("Dame") Motion to Dismiss.

## I.     INTRODUCTION

As basis for this action, Cleary Building has properly alleged that Dame has: intentionally violated Cleary's valuable trademarks rights in a famous mark resulting in consumer confusion and dilution to Cleary's famous mark; engaged in various acts of unfair competition; is a cybersquatter; and has defamed Cleary with the intent to profit from his defamation and/or with the intent to harm Cleary Building. Accordingly, on July 2, 2009, Cleary Building filed its complaint (the "Complaint") against Dame asserting multiple Lanham Act violations (Counts I – V) and state law claims (Counts VI – X).   (D.I. ("Compl.") 1.)   In response, Dame has moved to dismiss ("Dame's Motion") several of Cleary Building's claims under Fed.R.Civ.P. ("Rule __") 12(b)(6), including each Lanham Act claim and two state law claims, and to dismiss the remaining state law claims under Rule 12(b)(1). (D.I. 8.)

Cleary opposes Dame's Motion on multiple grounds.   As a general matter, Dame's Motion takes a narrow and improper view of the law and simply ignores certain important facts.   When the proper law and facts are applied, it is evident that Cleary Building's claims are well-pleaded and that Cleary has provided more than sufficient facts to survive a motion to dismiss.   Accordingly, Cleary respectfully requests that Dame's Motion be denied in its entirety.

## II.     STATEMENT OF FACTS

For purposes of Dame's Motion, all well-pleaded facts in the Complaint must be assumed to be true, and all reasonable inferences there from must be drawn in the light

most favorable to Cleary Building. *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). Accordingly, the following facts must be taken as true:

1.    Cleary Building, a Wisconsin corporation, is a leading manufacturer and builder of pre-engineered structures. (Compl. ¶ 2.)

2.    Cleary Building owns multiple United States Trademarks (collectively the "Cleary Building Marks") which clearly identify Cleary's products from those made and sold by others. (Id. ¶ 14.) The Cleary Building Marks are famous. (Id. ¶ 15.)

3.    As part of Cleary Building's commitment to service and excellence, and to clearly identify its products from those made and serviced by another, Cleary Building identifies its blueprint construction plans and products with its marks. (Id. ¶ 15.)

4.    Dame contracted with Cleary Building for the construction of a 50' x 100' x 18' 8" post frame building (the "Dame Building"). (Id. ¶ 17).

5.    On multiple occasions, Dame refused Cleary Building access to the Dame Building construction site while Cleary and Dame discussed issues with the Dame Building. (Id. ¶¶ 21, 22.)

6.    At then end of March and beginning of April 2009, Cleary Building attempted to contact Dame to do a final walk through and list of corrections. (Id. ¶ 24.)

7.    To date, Dame has refused to allow Cleary Building access to the Building to address final issues. (Id.)

8.    At least as early as May 27, 2009, Dame was advertising the Dame Building for sale in at least two online advertisements. (Id. ¶ 30.)

9.   In each advertisement, Dame provided direct links to his website www.myclearybuilding.com (the "Dame Website") and encouraged potential buyers to go to the Dame Website.  (Id.)

10.   In turn, at least as early as May 27, 2009, the Dame Website was using Cleary Building's blueprint plans, including at least one Cleary Building Mark, as a background to the opening page. (Id. ¶ 27.)

11.   Dame's use of Cleary Building's blueprint plans and at least one Cleary Building Mark were without permission. (Id. ¶ 28.)

12.   In addition, the Dame Website published, and/or is currently publishing, false and/or misleading statements about Cleary Building and/or the Dame Building. (Id. ¶ 31.)

13.   For example, Dame has falsely represented to the public that Cleary Building "declared the project finished" while, in fact, Dame refuses to allow Cleary Building access to the Dame Building to address final issues. (Id. ¶¶ 31b and 24.)

As set forth below, Dame disregards many of these salient facts and improperly applies established law in an attempt to evade responsibility for his wrongful acts.

## III.   SUMMARY OF LAW FOR MOTION TO DISMISS

In order to survive a motion to dismiss, a complaint need only allege sufficient facts to form a plausible claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009), *quoting Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.

1999) (internal quotation omitted).   "Granting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."   *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted).   Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' "   *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).   Here, Cleary has alleged facts not just sufficient to maintain its claims, but overwhelmingly so.

## IV.   ARGUMENT

### A.   Cleary Building's Cybersquatting Claim (Count I) Is Well-Pleaded And Has More Than Sufficient Factual Basis.

In response to Cleary Building's cybersquatting claim—Count I of the Complaint—Dame argues that Cleary has failed to allege sufficient facts to state a claim for relief that is plausible on its face.   Specifically, Dame contends that Cleary has failed to plead facts sufficient to state a plausible claim that (a) the www.myclearybuilding.com domain (the "Dame Website") is confusingly similar to a Cleary Building Mark, and (b) that Dame registered the Dame Website with a bad faith intent to profit.   Dame is contesting the facts *themselves* rather than whether the facts as pled are legally sufficient to make a claim for cybersquatting.   Each of Dame's arguments fail.

#### 1.   Cleary Building has pled sufficient facts to show that the Dame Website domain name is confusingly similar to a Cleary Building Mark.

To make out a claim for cybersquatting, a plaintiff must allege that the defendant made use of its trademark with a bad faith intent to profit, including use that is likely to

cause confusion or dilution. 15 U.S.C. § 1125(d)(1)(A).  While a majority of Dame's argument is spent on bad faith, Dame's Motion also argues that Cleary only makes conclusory allegations that the domain name www.myclearybuilding.com is confusingly similar to a Cleary Building Mark. (D.I. 8 at 17.)  But this argument simply ignores that Cleary has both identified the Cleary Building Marks and the Dame Website domain name, which, *ipso facto*, contains the "cleary" element. (Compl. ¶¶ 14 and 26.)  These facts are all that is required to support a plausible claim for confusion.  The fact that Dame does not consider the Cleary Building Marks and domain name www.myclearybuilding.com "confusingly similar" is not relevant to a motion to dismiss. *See Smith*, 561 F.3d at 1098 (not proper to weigh potential evidence on a Rule 12(b)(6) motion).  It is undoubtedly plausible that www.myclearybuilding.com, which only adds the generic modifier "my", is confusingly similar to the CLEARY word mark and logo. *See, e.g.,* McCarthy on Trademarks § 25:78 ("The addition in the accused domain name of generic or descriptive matter to the mark will usually not prevent a finding of confusing similarity."); *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201 (6th Cir. 2004) (accused domain name "foradodge.com" is confusingly similar to the trademark DODGE for autos).  Moreover, "[i]t is irrelevant under the ACPA [cybersquatting act] that confusion about a website's source or sponsorship could be resolved by visiting the website identified by the accused domain name." McCarthy on Trademarks § 25:78, *citing Coca-Cola Co. v. Purdy*, 382 F.3d 774 (8th Cir. 2004).

### 2. The Complaint contains well-pleaded facts more than sufficient to support a plausible claim of bad faith intent.

For purposes of Cleary Building's cybersquatting claim, the only remaining question is whether Cleary Building has pled sufficient facts to plausibly show that

Dame registered his website with a bad faith intent to profit.  For this element, Dame correctly notes that the Anticybersquatting Consumer Protection Act ("ACPA") provides nine nonexclusive fact-laden factors used to determine whether a person has had bad faith intent to profit.  However, the approximately six pages Dame spends analyzing these factors, (D.I. 8 at 18-23), is wholly inappropriate for a motion under Rule 12(b)(6). *See Smith*, 561 F.3d at 1098 (not proper to weigh potential evidence on a Rule 12(b)(6) motion). This is especially true here given that the nine factors provided by the ACPA are nonexclusive, highly factual in nature and are intended to be viewed in context with a defendant's entire conduct—conduct which is properly subject to discovery.  *See Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 368 (D.N.J. 2004) (noting that the ACPA factors are not exclusive or mandatory and the most important grounds for finding bad faith are the unique circumstances of each case).

The only proper test for a Rule 12(b)(6) motion is whether the Complaint contains sufficient facts to support a plausible claim of bad faith intent. *Twombly*, 550 U.S. at 555.  The very fact that Dame spends six pages analyzing the various facts from the Complaint is itself proof that Cleary has pled sufficient facts.  Once again, while Dame may disagree as to whether the facts establish bad faith, this is irrelevant to a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 556  It is undeniable that Cleary Building has pled numerous facts evidencing Dame's bad faith, including, but not limited to, the following:

- use of the Dame Website to post false and misleading statements about Cleary Building and/or the Dame Building (Compl. ¶ 31);

- apparent misrepresentation of the number of times the Dame Website has been accessed (Id. ¶ 31c);

-  use of the Dame Website domain to attempt to gain an unfair and illegitimate advantage in negotiating with Cleary Building (Id. ¶ 36); and

- offer to remove the Dame Website if Cleary Building meets Dame's monetary demands.  (Id.)

These facts are more than enough to provide a plausible basis for bad faith.

### a.   A majority of the nine ACPA bad faith factors favor Cleary Building and support a finding of bad faith

While the Court need not even weigh these facts as part of the nine bad faith factors provided in the ACPA, doing so only further shows that Cleary Building has alleged sufficient facts for a plausible showing of bad faith.  Again, Dame is fighting the facts themselves rather than whether, as pled, they form the basis of the ACPA claim.

As an initial matter, Dame admits that four of the factors (I, II, III, and IX) support Cleary Building. (D.I. 8 at 22.)   In turn, Cleary Building recognizes that at this time, factors VII and VIII are not at issue.  As to the remaining factors (IV, V and VI), the Complaint is well-pleaded with facts sufficient to support each factor.  Notably in order to survive a motion to dismiss, Cleary Building need not prove bad faith.  Instead, Cleary need only show that the Complaint contains facts which plausibly support bad faith.  *Twombly*, 550 U.S. at 555.  Given Dame's admission that four of the nine factors already favor Cleary Building, any facts which plausibly support even a single additional factor—much less three additional factors—is more than sufficient.

Turning first to factor IV, Dame asserts that his use of the Dame Website to air his grievances is a bona fide noncommercial use. (D.I. 8 at 23.)  As discussed in greater

detail in Section III.B.2. below, however, Cleary Building has asserted more than enough facts detailing Dame's commercial and improper use of the Dame Website. This includes Dame's use of the website to post false and defamatory statements about Cleary Building (Compl. ¶ 31), the direct link between Dame's commercial offers to sell the Dame Building and the Dame Website (Id. ¶ 30), and Dame's use of the website to leverage a monetary settlement from Cleary (Id. ¶ 36). Viewing these facts in a light most favorable to Cleary, Dame cannot reasonably attempt to escape liability by claiming he is a mere cyber-griper.[1]  More importantly, it is readily apparent that Cleary has pled sufficient facts to plausibly support this factor and to support a finding that Dame had bad faith intent.

Similarly, for factor V the well-pleaded facts more than plausibly support an inference that Dame intended to divert customers from Cleary Building for his commercial gain.  Dame's intent to divert customers is evidenced not only by the Dame Website and the direct link from Dame's advertisements, but also by Dame's posting links to the Dame Website on other forums where Dame tries to divert potential Cleary Building customers to the Dame Website.  (Compl. ¶ 29.)  As noted in the Complaint, Cleary Building has a good faith basis for believing that Dame is acting with the improper intent to gain an unfair and illegitimate advantage in dealing with Cleary

---

[1] As one court has noted:

> [E]xcluding cyber-gripers from the scope of the ACPA has the potential of "eviscerat[ing] the protections of the bill by suggesting a blueprint for cybersquatters who would simply create criticism sites in order to immunize themselves from liability despite their bad-faith intentions." For that reason, it is important to carefully examine the entire record, to ascertain the context surrounding the formation and use of the disputed domain name, and to scrutinize the defendant's actions for any evidence that the griping may in fact be a pretext disguising an underlying profit motive.

*Mayflower Transit*, 314 F.Supp.2d at 372 (quoting S. Rep. 106-140, at 9).

Building.  (Id. ¶ 36.)  For example, Dame's apparent misrepresentation of the number of visits to his site (Id. ¶ 31c) serves no legitimate purpose other than to suggest he is having an impact on potential customers in order to harass Cleary Building into accepting his unreasonable demands.  On their face, these facts are more than sufficient to support factor V and a plausible finding of bad faith intent.

Finally, as to factor VI, Cleary Building has asserted sufficient facts to support a claim that Dame has sought to sell or transfer his domain.  Specifically, Cleary Building has asserted both that "Dame uses the Dame Website domain with the bad faith intent to attempt to gain an unfair and illegitimate advantage in negotiating with Cleary Building" and that Dame "has offered to remove the Dame Website if Cleary Building meets his demands."  (Complaint at ¶ 36.)  Dame attempts to rely on *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362 (D.N.J. 2004) for the proposition that such conduct cannot, as a matter of law, constitute bad faith. (D.I. 8 at 23.)  But *Mayflower Transit* includes no such holding.  Instead, the *Mayflower Transit* decision holds that, based on the facts in that case, the court was unwilling to believe the plaintiff's vague allegations. *Id.* at 369.  Unlike in *Mayflower Transit*, here Cleary's allegations must be accepted as true and viewed in a light most favorable to Cleary Building.  *Dias*, 567 F.3d at 1178. When this is done, there is more than sufficient factual basis to plausibly believe that Dame sought to sell or transfer his domain as part of Dame's bad faith intent to profit from the Dame Website registration.  *See Harrison v. Microfinancial Inc.*, 2005 USDistLexis 2804 (D.Mass., Feb. 24, 2005) (court found disgruntled customer violated ACPA by registering domain name containing defendant's trademark, at which he operated a Web site critical of defendant -- court's finding of bad faith rested in large

part on plaintiff's offer to transfer domain to defendant if defendant refunded lease payments plaintiff had made which were at the heart of plaintiff's dispute with defendant).

In order to prevail on his motion, Dame needed to show that there are no well-pleaded facts which could plausibly support Cleary Building's cybersquatting claim. Dame has not made, and cannot make, such a showing.  To the contrary, Cleary has shown more than sufficient factual basis to plausibly support its cybersquatting claim. Accordingly, Cleary Building asks that the Court deny Dame's Motion to dismiss this claim.

**B.    Cleary Building's Lanham Act Claims (Counts II–V) Are Well-Pleaded and Have More Than Sufficient Factual Basis.**

Dame seeks to dismiss Counts II–V of the Complaint based on the assertion that Cleary Building has failed to allege sufficient facts to state a claim for relief that is plausible on its face.   In Dame's Motion, Dame "focused on the 'use in commerce' language rather than the 'use in connection with the sale of goods' clause.   This approach is erroneous.  'Use in commerce' is simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause."   *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) *citing Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S.Ct. 252, 97 L.Ed. 319 (1952).  As Dame's Motion contains no argument about jurisdictional issues, and given the focus of Dame's arguments on commercial conduct, it appears Dame did not intend to base his argument on the "in commerce" portion of the Lanham Act.  Instead, Dame's seems to be arguing that the Complaint lacks sufficient facts to plausibly show Dame has used a Cleary Building Mark "in

connection with" the sale, offering for sale, or advertising of a good or service under the Lanham Act.  In any case, Dame's arguments are insufficient.

As required, Dame recognizes that the following facts must be accepted as true and viewed in a light most favorable to Cleary Building:

- Dame has advertised the sale of the Dame Building, which itself includes at least one Cleary Building Mark, in at least two online advertisements accessible by anyone using the Internet;

- in each of these online advertisements Dame further included direct links to the Dame Website, where the Dame Website included at least one Cleary Building Mark without authorization; and

- the Dame Website contained false and/or misleading statements about Cleary Building and/or the Dame Building.

While Dame cannot dispute these facts, Dame seeks dismissal of Counts II–V based on the assertion that as a matter of law these facts are insufficient.  In support of his assertion, Dame argues that "Cleary can only prevail on these four claims if Dame was using his website in commerce or in connection with the sale of goods that could be confused as his own [which] is simply not plausible under Cleary's allegations." (D.I. 8 at 11.)  That Dame was using his website in commerce and in connection with the sale of goods that could be confused with Cleary's or his own is exactly the case Cleary has pled and, accordingly, Dame's Motion must fail on both law and fact.

### 1.    Under the correct law, Cleary Building has stated a plausible claim for relief under the Lanham Act.

As an initial matter, Dame's argument simply misstates the law.  Dame asserts that Cleary Building can only prevail if Dame was using his website "in connection with the sale of goods that could be confused as *his [i.e. Dame's] own*." (D.I. 8 at 11 (emphasis added).)  The law is not so limited.

The fact that Dame does not intend to insert himself as a competitor to Cleary Building is irrelevant.  Cleary Building has a right to protect and control the use of its trademarks in connection with the sale of any competing product—especially a product which Cleary Building started to construct but was not permitted to finish:

> Distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image.  If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder and its distribution constitutes trademark infringement.

*Warner-Lambert Co. v. Northside Development Corp.*, 86 F.3d 3, 39 (2d Cir. 1996).

Dame attempts to dissuade the Court on the viability of such a claim by summarily arguing:

> If this were sufficient to constitute use of a mark in commerce, then every person who has ever sold a used Chevrolet or Pontiac through the classifieds is liable for infringing on the trademarks of General Motors.

(D.I. 8 at 16.)  While it appears Dame is attempting to articulate a first sale doctrine defense, Dame simply ignores this Circuit's and other Circuits' well established first sale doctrine case law.

First, it should be noted that the first sale doctrine is not applicable because Dame has not yet fully paid for the Dame Building.  Until Dame has completed payment, it cannot be said Cleary Building has allowed the Dame Building to enter commerce for the first sale doctrine's analysis.  *See* Restatement (Third) Unfair Competition § 24, comment b (1995) (trademark exhaustion, or first sale doctrine, only applies "once the owner has permitted those goods to enter commerce.")  Here, nothing in the Complaint provides any basis for finding that Cleary Building has allowed the Dame Building to enter commerce such that the first sale doctrine can apply.  To the contrary, the Complaint evidences that rather than releasing the building into commerce, Cleary

Building has placed a lien on the building to attempt to limit Dame's improper and unauthorized attempts to sell the Dame Building under Cleary Building's name and trademarks.  (Compl. ¶ 31b.)

Even if Dame could establish that a first sale has occurred—which is not supported by the Complaint and which Cleary Building disputes—any first sale doctrine defense still fails because Dame has not allowed Cleary to address admitted issues with the Dame Building.  As the Tenth Circuit recently held:

> [T]he first sale doctrine is not applicable "when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner."  A materially different product is not genuine and may generate consumer confusion about the source and the quality of the trademarked product. We hold, as other federal circuit courts have held, that the unauthorized resale of a materially different trademarked product can constitute trademark infringement.

*Beltronics USA, Inc. v. Midwest Inventory Distribution*, LLC, 562 F.3d 1067, 1072 (10th Cir. 2009) (internal citations omitted).  In this case, Cleary recognizes that the Dame Building does meet its quality control standards.  In fact, as Cleary Building specifically noted in the Complaint, "To date, Dame has refused to allow Cleary Building access to the Building to address final issues."  (Compl. ¶ 24.)

Dame's false and misleading statements on the Dame Website only accentuate the problems with Dame's unauthorized attempt to sell a non-genuine product using a Cleary Building Mark.  As is well-pleaded in the Complaint, Dame has falsely represented to the public that Cleary Building has "declared the project finished." (Complaint at ¶ 31b.)  Not only is this statement false on its face, it improperly suggests that the Dame Building is a genuine Cleary Building product that Cleary has certified

and approved it.  This is simply not true, and must be considered false for purposes of this motion to dismiss.[2]

Applying Dame's analogy more accurately for facts in the Complaint, General Motors would surely have a Lanham Act claim if a defendant took a car off the assembly line before it was complete and then attempted to sell it as a genuine Pontiac or Chevrolet product.  *Warner-Lambert*, 86 F.3d at 39; *see also Beltronics*, 562 F.3d at 1072.

> **2.** **Cleary's well-pleaded facts are more than sufficient to show that Dame used a Cleary Building Mark "in connection with" Dame's commercial offers to sell the Dame Building.**

In order to meet the commercial requirements of Claims II – V, Cleary Building need only plead sufficient facts to show Dame was using a registered mark "in connection with" a sale, offer for sale, or advertisement of a good or service.[3]  As noted

---

[2] The materiality of Dame's false and misleading statements, and the potential damage caused, is exemplified by statements posted on public forums since the filing of the complaint.  For example, at http://www.topix.com/forum/city/franktown-co/TB7IAKBMTIBT3T38K a potential consumer who was directed to the Dame Website by Mr. Dame notes (emphasis added):

> I have been looking at different metal building manufactures and I can say I will not be considering Cleary. The quality of workmanship and damage done to the metal is enough to convince me. *I cannot believe they would even consider this a finished product.*

[3] **Claim II – Trademark Dilution Under 15 U.S.C. § 1125(c) –** "While the meaning of the term "commercial use in commerce" is not entirely clear, [courts] have interpreted the language to be roughly analogous to the "in connection with" sale of goods and services requirement of the infringement statute." *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).

**Claim III - Trademark Infringement Under 15 U.S.C. § 1114 –** Imposes liability for use "of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(a) and (b).

**Claims IV and V - Federal Unfair Competition and False Advertising Under 15 U.S.C. § 1125(a) –** Imposes liability use "in connection with any goods or services."

above, while Dame erroneously framed the issue as whether Dame was engaged "in commerce," Dame's arguments do not relate to the jurisdictional requirement of "in commerce" under the Lanham Act, and instead should be understood as relating to the "in connection with" clause. *See Bosley*, 403 F.3d at 677. (See, e.g., D.I. 8 at 11.)

On their face, Cleary Building's well-pleaded facts show that (a) Dame was offering to sell a good or service (i.e., the Dame Building), (b) Dame was using a Cleary Building Mark (e.g., both the Dame Website and the Dame Building contain a Cleary Building Mark), and (c) there is a connection between the offer to sell and the use of the Cleary Building Mark:

| Offering to Sell a Good or Service | Dame has advertised the sale of the Dame Building in at least two online advertisements (Compl. ¶ 30.) |
|---|---|
| Using a Cleary Building Mark | The Dame Website included at least one Cleary Building Mark. (Id. ¶ 27.) |
| | Dame Building contains at least one Cleary Building Mark.  (Id. ¶ 15.) |
| Connection Between The Offer to Sell and The Use of Cleary Building Mark | Both online advertisements provided direct hyperlink connections to the Dame Website and encouraged potential consumers to go to the Dame Website.  (Id. ¶ 30.) |
| | The Dame Building being offered for sale contains at least one Cleary Building Mark. (Id. ¶¶ 15, 30.) |

In view of these facts, Dame still attempts to argue that, as a matter of law, Cleary Building is not plausibly entitled to relief.  Dame's arguments fail.  In essence, Dame's argument can be summarized as follows:

- the Dame Website, which included the use of the Cleary Building Marks, is a parody or gripe site which constitutes fair use criticism of Cleary Building and is therefore non-commercial, and

- Dame's online advertisements are not "in connection with" the Dame Website.

In support of these arguments, Dame spends numerous pages summarizing cases related to parody and gripe sites.   While Cleary Building does not dispute that non-commercial parody and/or gripe sites are entitled to First Amendment protection and fall out from under the Lanham Act, the Dame Website is not and cannot be considered a non-commercial parody or gripe site under the current facts.   Yet again, Dame is seeking to contest the facts as pled in the complaint, rather than whether the facts, presumed to be true, are sufficient to state a cause of action.   They are.

> a.     **The Dame Website cannot be considered a mere gripe site because Dame is using the site to publish false and defamatory statements regarding Cleary Building.**

First, any fair use and First Amendment protection afforded to parody and gripe sites is not applicable here because Dame's has used his site to publish false and defamatory statements about Cleary Building.   As the Supreme Court has stated, "The government may ban forms of communication more likely to deceive the public than to inform it."   *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 563 (1980).   Because Dame is using the website to post false and defamatory statements about Cleary Building, the Dame Website cannot fairly be considered a mere gripe site.   Nor can Dame's use of the Dame Website be characterized as fair use criticism.   Posting false and misleading statements is not criticism, it is defamation.

> b.     **The direct hyperlink between the Dame Website and Dame's online advertisements is sufficient to satisfy "in connection with" under the Lanham Act.**

Second, Dame's assertion that the Dame Website is non-commercial because the advertisements "were never linked *from* the website" is unavailing. (D.I. 8 at 12 (emphasis in original).)   The only requirement for commercial activity under Counts II–V

is that the use of the Dame Website be "in connection with" the offer to sell.  Here, there are more than sufficient facts to support a claim that Dame was using the Dame Website, including at least one Cleary Building Mark, "in connection with" his online advertisements.

In his motion, Dame cites to *Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*, 527 F.3d 1045 (10th Cir. 2008) and *Bosley*, 403 F.3d 672 for the proposition that "linking a critical website to another website that sells something— even a competing product—does not convert the criticism into commercial activity subject to the Lanham Act.  527 F.3d at 1053, *citing Bosley*, 403 F.3d at 677."  (D.I. 8 at 12.)[4]  But neither *Utah Lighthouse* nor *Bosley* make such a holding.  Instead, noting that their analysis was a "fact sensitive, case-by-case assessment" both courts focused primarily on the fact that in each case there was no direct link between the criticism site and any commercial site.  *Utah Lighthouse*, 527 F.3d at 1052-53; *Bosley*, 403 F.3d at 677-78.  Noting the factual similarity with *Bosley*, the *Utah Lighthouse* court went on to hold that in a situation where there is no *direct* linking between the criticism website and the commercial activity, "the 'roundabout path' to the advertising or commercial use of others is simply 'too attenuated.' "  *Id.* at 1053, *citing Bosley*, 403 F.3d at 679.

Unlike *Utah Lighthouse* and *Bosley*, however, in this case there is a direct link between the Dame Website and the commercial sites.  Both online advertisements contained a specific link to the Dame Website and actually encouraged consumers to visit the Dame Website. (Compl. ¶ 30.)  In this type of situation, where there is a direct link between the non-commercial site and the commercial activity, courts have

---

[4] Cleary Building notes that it is unable to find any support for Dame's statement in the cited portion of *Utah Lighthouse* or in the *Utah Lighthouse* decision at all.

consistently found that the direct linking is sufficient to render an otherwise non-commercial website subject to the Lanham Act.  *See Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) (concluding that a site was commercial because it contained hyperlinks to two commercial websites, even though the links were "extremely minimal"); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001) (holding that a website which directly linked to other commercial operators was itself commercial); *see also OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176, 185-86 (W.D.N.Y. 2000) (finding a hyperlink between defendants' non-commercial site and advertisement site sufficient for "in connection with" element under the Lanham Act).

As the Tenth Circuit recognized in *Utah Lighthouse*, determining whether linking is sufficient to render an otherwise non-commercial website subject to the Lanham Act is a "fact sensitive, case-by-case assessment."  *Utah Lighthouse*, 527 F.3d at 1052-53. In cases such as this one, where there is a direct link between the otherwise non-commercial website and the commercial activity, the courts have consistently held that the linking is sufficient for establishing "in connection with" under the Lanham Act. Accordingly, Cleary Building's Complaint, which alleges a direct link between Dame's advertisements and the Dame Website, provides more than enough facts to support the "in connection with" requirement of Cleary Building's Lanham Act claims (Counts II–V).

The remaining cases summarized by Dame provide no basis for Dame's Motion. While Dame summarizes many additional non-commercial gripe site cases, Dame's reliance on these cases is based on the faulty premise that Cleary Building can only

prevail if Dame was using his website "in connection with the sale of goods that could be confused as his own." As discussed above, this simply misstates the law.

For purposes of this motion, Cleary Building has established more than enough factual support to plausibly support Counts II–V of the Complaint. Accordingly, Cleary respectfully requests this Court deny Dame's motion and allow Cleary Building to proceed with Counts II–V.

### C.      Diversity jurisdiction is properly asserted

In view of Cleary Building's well-pleaded Complaint, this Court has jurisdiction over Cleary Building's state law claims based both on supplemental jurisdiction, under 28 U.S.C. § 1367(a), and diversity jurisdiction, under 28 U.S.C. § 1332. (Compl. ¶¶ 7 and 8.) For purposes of the present motion, Dame has requested dismissal of all Cleary Building's federal claims—and thus any supplemental jurisdiction. As detailed herein, Dame's Motion to dismiss any federal claim should be denied. However, even if the Court were to dismiss all federal claims, this Court would still have jurisdiction over the state law claims based on diversity. While Dame seeks to dismiss diversity jurisdiction under Rule 12(b)(1), Dame has failed to meet his burden.

A complaint may not be dismissed for failure to plead the required amount in controversy unless the defendant can establish "to a legal certainty" that the claim is really for less than the jurisdictional amount; otherwise the plaintiff's good faith allegations of the amount in controversy will control. *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008), *citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir. 2003). Dame not only fails to meet this high standard—he completely fails to acknowledge it. (D.I. 8 at 24-25.)

Despite Dame's complete failure to carry his burden of proof, Cleary Building further notes that it has pled more than sufficient basis for its damages exceeding the jurisdictional amount.  For example, as part of Cleary Building's defamation and trade disparagement claims—which Dame does not dispute are properly pleaded—Cleary Building has specifically asserted that Dame has caused Cleary Building to lose control of its reputation and has diverted sales away from Cleary Building.  (Complaint at ¶¶ 70 and 74.)  In addition, it can also be inferred from the complaint that a single pole barn Cleary Building sells can cost at least as much as $73,500.  Given the need for corrective advertising (to gain control of reputation), the high dollar value of each lost sale, and the asserted contractual damages, the $75,000 amount in controversy is more than plausible.  Moreover, Dame himself has represented that the Dame Website has been accessed a substantial number of times—suggesting that the impact of his false and defamatory conduct is potentially very large.  While Dame argues that the number of website hits cannot be used to prove how many consumers actually visited the site, the number of hits is more than enough to establish the plausibility of Cleary Building's damages claim.

Although not contained in the Complaint, the various websites and forums to which Dame has posted include further evidence that potential consumers have been diverted away from Cleary due to the Dame Website and even the false and derogatory statements identified in the Complaint.[5]  Cleary Building has a good faith basis for

---

[5] For example, at http://www.topix.com/forum/city/franktown-co/TB7IAKBMTIBT3T38K a potential consumer who was directed to the Dame Website by Mr. Dame notes (emphasis added):

> I have been looking at different metal building manufactures and I can say
> I will not be considering Cleary. The quality of workmanship and damage

asserting that Dame's conduct has caused, and will continue to cause, Cleary Building damages in excess of $75,000.  This is sufficient for purposes of diversity jurisdiction.

It is not Cleary Building's obligation to prove its damages claim—it is Dame's burden to prove "***to a legal certainty***" that the statutory minimum cannot be met. *McPhail*, 529 F.3d at 953, *citing Red Cab*, 303 U.S. at 289 (emphasis added).  Because Dame has not and cannot establish "to a legal certainty" that the claim is really for less than $75,000, the Court should not dismiss for failure to plead the jurisdictional amount under Rule 12(b)(1).

**D.     Cleary Building's State Trademark Infringement Claim (Count VI) and Deceptive Trade Practices Claim (Count VII) are Well-Pleaded**

Dame seeks dismissal of Cleary Building's state trademark infringement claim and deceptive trade practices claims under Rule 12(b)(6).  In each case, the Court should deny Dame's request because these claims are well-pleaded with sufficient factual support.

**1.     Cleary Building's state trademark infringement claim is both well-pleaded and plausible**

For Cleary Building's state trademark infringement claim, Dame seeks dismissal on the same grounds as for Cleary Building's Lanham Act claims.  Once again, while Dame improperly focuses on the phrase "in commerce," Dame's actual argument is that Cleary Building cannot establish that Dame's use of a Cleary Building Mark was "in

---

> done to the metal is enough to convince me. *I cannot believe they would even consider this a finished product.*

In another forum, http://www.topix.com/forum/city/pueblo-co/TBQ46UH1B4HDFLEGA another potential customer notes:

> I am considering putting a large barn/building on my farm land and wanted to look at both Cleary and Morton. Thank you so much for this forum, as I would never buy a Cleary now after seeing these comments, especially www.myclearybuilding.com. …

connection with" a commercial activity.   This argument fails for the same reasons articulated in Section III.B., above.

The only potential difference from Dame's Lanham-Act-arguments to Dame's state-trademark-infringement-arguments is that the Restatement (Third) of Unfair Competition (the "Restatement") may govern the state trademark infringement claims rather than Lanham Act jurisprudence.  (D.I. 8 at 25-26.)  Since Dame's Lanham-Act-arguments have been adequately disposed of above, Cleary Building addresses only Dame's arguments regarding the Restatement here.

Citing to the Restatement, Dame argues that because he never used his website to identify his business or market his goods, and because anyone visiting the Dame Website could not be confused as to whether Dame or Cleary built the barn in question, that Cleary cannot state a claim for relief under the Restatement.  (D.I. 8 at 26.)  In doing so, Dame simply ignores § 20(b) of the Restatement which imposes liability on an actor who:

> in identifying the actor's business or in marketing the actor's goods or
> services the actor uses a designation that causes a likelihood of confusion
> (b) that the goods or services marketed by the actor are produced,
> sponsored, certified or approved by the other;

Restatement (Third) Unfair Competition § 20.  This is wholly consistent with Lanham Act jurisprudence which allows the mark holder to control when a product is "certified or approved" such that it can be marketed using the mark holder's mark.  *See, e.g., Warner-Lambert*, 86 F.3d at 39; *see also* Section III.B., supra.

Once again, for the present motion the facts are undisputed.   Before Cleary Building was able to complete the Dame Building, Dame blocked Cleary's access to the building site.   Subsequently, Dame advertised the Dame Building for sale with direct

connections to Dame's unauthorized use of a Cleary Protected Mark.   In connection with the advertisement, Dame was also falsely representing to the public that Cleary had certified the building as complete.   These facts constitute a valid claim for relief under   Colorado   trademark   infringement—regardless   of   whether   Lanham   Act jurisprudence or the Restatement is followed.   Accordingly, Dame's request to dismiss Cleary Building's state trademark infringement claim (Count VI) should be denied.

## 2.    Cleary Building's deceptive trade practices claim (Claim VII) is both well-pleaded and plausible.

For   Cleary   Building's   deceptive   trade   practices   claim   under   the   Colorado Consumer Protection Act (CCPA), Dame seeks dismissal on the grounds that (a) Dame's conduct is not "in the course of [his] business, vocation, or occupation" and (b) that   Dame's   actions   lack   sufficient   public   impact.    In   order   to   prevail,   Dame   was required to show that Cleary Building asserted no facts which could plausibly support these elements.   Because Cleary Building has asserted facts to support both elements, Dame's request should be denied.

Under the CCPA, liability attaches to a person who engages in deceptive trade practice "in the course of such person's business, vocation, or occupation."   Relying on this language, Dame asserts that he cannot be liable under the CCPA because he is not in the barn construction business.   But nothing in the CCPA requires that Dame must be Cleary's competitor, or that he be engaged in deceptive trade practices in the course of his *primary* business, vocation or occupation.    Moreover, as a matter of statutory construction, business, vocation and occupation must all have different meanings to prevent the terms from being superfluous.   Accordingly, in order to state a valid claim, Cleary need only plead facts sufficient to show that Dame was engaged in any business

activity of his own.  This is clearly satisfied in the Complaint.  As is properly alleged in the complaint, Dame is and/or was engaged in the business of selling a pole barn. (See Compl. ¶ 30.)

The only remaining question is whether Dame's activities have a sufficient public impact to fall under the CCPA.  For purposes of this motion to dismiss, however, it is improper to weigh the evidence to determine whether Dame's activities have a sufficient public impact under the CCPA.  *See Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir 2009).  Instead, the Court need only consider whether Cleary Building has pled facts that could plausibly support a significant public impact.  Cleary Building has met this requirement.  Although Cleary recognizes that the present facts relate only the sale of a single pole barn, the public impact alleged is much greater.  For example, by Dame's own representations the Dame Website has been accessed by a high number of potential consumers who have been subject to Dame's false and/or misleading statements about Cleary Building and the Dame Building.  Moreover, while Dame's business activities are only directed to a single building, given the relatively large dollar value of this building ($73,500), any sale of this building will have a much greater public impact.

This is not a situation where the "wrong is private in nature."  *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003).  Dame has intentionally taken this issue to the public in order to affect a large number of potential customers for a large ticket item.  Cleary Building submits that these facts are sufficient to state a plausible claim for relief under the CCPA and, accordingly, requests that the Court deny Dame's motion to dismiss this claim.

**E.    Cleary Building requests its claim for punitive damages be dismissed without prejudice.**

In view of Colo. Rev. Stat. Sec. 13-21-102 (2005), Cleary Building concedes that its claim for punitive damages is premature.  Accordingly, Cleary Building requests that this claim for relief be dismissed without prejudice.  *See Adams v. Corrections Corp. of America*, 187 P.3d 1190, 1197-98 (Colo. App. 2008) (dismissing premature claim for punitive damages without prejudice).

**V.    CONCLUSION**

Cleary Building's Complaint is well-pleaded and provides more than sufficient factual basis to plausibly support each claim for relief.  The fact that Dame disagrees with Cleary's allegations is both expected and irrelevant to Dame's motion to dismiss.  When the proper law and facts are applied, Cleary Building has done more than enough to state plausible claims for relief.  Accordingly, Dame's Motion should be denied.

As to Cleary Building's Lanham Act claims, Dame seeks to escape liability by claiming his use of a Cleary Building Mark and the Dame Website was mere fair use criticism of Cleary Building.  But the facts contradict Dame's claim.  Not only has Dame directly linked his commercial activity to the Dame Website, Dame has published false and misleading statements on the Dame Website which directly relate to Dame's Lanham Act violations.  Likewise, although Dame attempts to dispute whether Cleary's facts prove bad faith, there is no real dispute that the facts plausibly support bad faith.  Accordingly, Cleary should be permitted to proceed with these claims, allowed discovery to further prove its claims, and have the claims decided on the merits.

Even if the Court were to dismiss all of Cleary Building's Lanham Act claims—which it should not—diversity jurisdiction still remains with this Court.  Dame has wholly

failed to make the requisite showing to dismiss under Rule 12(b)(1).  Since Dame has not moved to dismiss at least Counts VIII, IX and X of the Complaint, these claims must proceed with this Court.

Cleary Building respectfully requests that the Court deny Dame's Motion in its entirety.

Dated:  September 21, 2009

COOLEY GODWARD KRONISH LLP
Eamonn Gardner (#38088)
Andrew Hartman (#32503)


By: /s/  *Eamonn Gardner*
Attorneys for Plaintiff
CLEARY BUILDING CORP.

380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
Tel:    (720) 566-4000
Fax:    (720) 566-4099
E-Mail:  egardner@cooley.com
E-Mail:  ahartman@cooley.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2009, I electronically filed the foregoing

**PLAINTIFF CLEARY BUILDING CORP.'S OPPOSITION TO DEFENDANT'S MOTION**

**TO DISMISS**  with the Clerk of Court using the CM/ECF system, which will send

electronic notification of such filing to the following:

Milo D. Miller III
Milo D. Miller, Attorney at Law LLC
600 17th Street, Ste 2800 S.
Denver, CO  80202
E-Mail:  milomiller69@yahoo.com

Jesse Howard Witt
The Witt Law Firm
1445 Market Street, Ste 340
Denver, CO  80202
E-Mail:  jesse@jessewitt.com

*/s/ Eamonn Gardner*

327680 v5/CO